The appellant, June Greenwald, was convicted of the unlawful distribution of marijuana, in violation of § 13A-12-211(a),Code of Alabama 1975. She was sentenced to ten years in the state penitentiary, pursuant to the Habitual Felony Offender Act; however, this sentence was suspended and the appellant was granted probation for a period of five years.
The evidence tended to show that on March 31, 1989, Sherry Wilburn of the Huntsville Police Department was working as an undercover investigator for the North Alabama Drug Task Force. At approximately 10:00 that evening, she went to a nightclub called Reno's in Marshall County. While there, she came into contact with the appellant.
Investigator Wilburn sat down at the bar and the appellant came over to where she was sitting and began a conversation with her. During the course of the conversation, the appellant said that "she sure wished she had some smoke." Investigator Wilburn replied, "I wished I had some too, [b]ut I'm kind of new around here and I don't know where to get any." The appellant then stated that she knew where to get some marijuana but that she had no money. Investigator Wilburn told the appellant that she had the money to buy a quarter bag and just needed to know where to get it. The two then decided to leave Reno's and go buy some marijuana.
The appellant drove Investigator Wilburn to a house trailer and introduced her to a man named Patrick Morrow once they were inside. The appellant told Mr. Morrow that Investigator Wilburn was a friend of hers and wanted to buy a quarter bag of marijuana. Mr. Morrow told Investigator Wilburn that it would cost $35, so she took $35 out of her pocket and passed it to the appellant. The appellant counted the money and handed it to Mr. Morrow, who in turn gave Investigator Wilburn the marijuana.
On the way back to Reno's, Investigator Wilburn asked the appellant what she owed her for getting her the marijuana. The appellant replied, "Just a couple of joints." Investigator Wilburn placed some marijuana in the cellophane wrapper of a cigarette pack and gave it to the appellant. The appellant then dropped Investigator Wilburn off at her car, which was in the parking lot of Reno's.
The appellant raises three issues on appeal.
 I
The appellant first contends that the evidence was insufficient to support her conviction. More specifically, the appellant alleges that there was no evidence offered at trial that she aided or abetted Patrick Morrow in the sale of the marijuana or that she acted as Mr. Morrow's agent in any way. The appellant relies upon Hill v. State, 348 So.2d 848
(Ala.Cr.App. 1977), cert. denied, 348 So.2d 857 (Ala. 1977), in support of her contention.
The facts presented in Hill, supra, are virtually identical to those in the case at bar. However, the appellant in Hill,supra, was indicted for the narrow charge of "sale of marijuana." The appellant in the case at bar was indicted for the much broader charge of "furnishing" marijuana. Thus, it is the opinion of this court that Hill, supra, is distinguishable.
"Furnish" means to supply by any means, by sale or otherwise, and a sale need not be shown. McKissick v. State, 522 So.2d 3
(Ala.Cr.App. 1987). The ordinary meaning of "furnish" is to provide or supply. Walker v. State, 428 So.2d 139
(Ala.Cr.App. 1982). Moreover, the participation of a defendant in, or his or her criminal linkage with, a "sale" is the basis of criminal liability, and not the actual act of the defendant in physically transferring the controlled substance to the buyer. Martin v. Alabama, 730 F.2d 721 (11th Cir. 1984). Therefore, contrary to the appellant's contention, the evidence was sufficient to support her conviction. *Page 40 
 II
The appellant next contends that the trial court erred in denying her motion for a continuance.
On the day before trial, counsel served a subpoena on Patrick Morrow, the appellant's co-defendant. On the day of trial, defense counsel noted Mr. Morrow's absence. The trial court issued an instanter order for Mr. Morrow to be picked up by the sheriff's department; however, the sheriff's department was unable to locate Mr. Morrow. It was subsequently learned from Mr. Morrow's attorney that he had returned to work in North Carolina.
On the second day of trial the following occurred:
 "Mr. Matthews: Your Honor, I've searched the hallways for Mr. Morrow and he's not out there and I don't —
 "THE COURT: Yes, sir, at 11:38 yesterday when you got here you announced ready and you told me that Mr. Morrow had been subpoenaed and requested the Court's help in getting him here.
 "And at your request, I issued an order to the Sheriff to find him and bring him in if they could and we received a report that Mr. Morrow was out of the State of Alabama.
 "The Court has done all it can to help you get Mr. Morrow here.
 "MR. MATTHEWS: Well, Your Honor, he is a material witness in this case. I can't proceed without him.
"THE COURT: Call your next witness, Counsel.
 "MR. MATTHEWS: Well, I object to being forced to proceed with the defense when I can't call a material eyewitness to this alleged offense.
"THE COURT: Call your next witness, Counsel.
". . . .
 "(Whereupon, the jury leaves the courtroom, after which the following proceedings occurred:)
". . . .
 "THE COURT: . . . [T]here was no motion to continue the case made. You announced ready.
 "MR. MATTHEWS: Yes, sir, because I in good faith had subpoenaed a witness, had talked with a witness and told him to be here.
"THE COURT: Yes, sir, I know you had.
". . . .
 "MR. MATTHEWS: Well, at this time, I move for a continuance in this case until such time as the presence of that witness can be had.
"THE COURT: Your motion is denied.
 "MR. MATTHEWS: And we respectively reserve exception."
Thereafter, the trial court allowed defense counsel, out of the presence of the jury, to make an offer of proof as to what Mr. Morrow's testimony would be. The expected testimony was that the appellant did not handle the money or marijuana exchanged between Mr. Morrow and Investigator Wilburn. After that, Mr. Morrow's attorney testified, outside the presence of the jury, that he had advised his client to invoke his Fifth Amendment rights if called as a witness in the appellant's trial.
The question of whether a continuance should be granted is a matter largely within the discretion of the trial court, and its decision will not be reversed on appeal absent a showing of clear or gross abuse of that discretion. Ex parte Saranthus,501 So.2d 1256 (Ala. 1986); Johnson v. State, 542 So.2d 341
(Ala.Cr.App. 1989); Primm v. State, 473 So.2d 547
(Ala.Cr.App. 1984). "As the United States Supreme Court stated: 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' Ungar v. Sarafite,376 U.S. 575, 589, 84 S.Ct. 841, 850, [11] L.Ed.2d [921] (1964)." Adkinsv. State [Ms. 7 Div. 146, Aug. 24, 1990] (Ala.Cr.App. 1990).
After a careful review of the record, paying special attention to Mr. Morrow's attorney's testimony, we find that the trial court did not abuse its discretion in denying the appellant's motion for a continuance. *Page 41 
 III
Finally, the appellant contends that her motion for a new trial should have been granted because one of the jurors was not a resident of Marshall County.
After conducting an evidentiary hearing on the appellant's motion, the trial judge rendered the following judgment:
 "A bench trial was held on the issues raised as grounds # 10 in the defendant's Motion for New Trial being whether or not the juror, Heughan, was a resident of Marshall County as required by Section 12-16-150(1) Code. The evidence shows that the juror teaches school in Madison County, maintains an apartment in Madison County and is registered to vote in Madison County. On the other hand, she was born and reared in Marshall County, at all pertinent times has owned a residence in Marshall County, gets her driving license in Marshall County, receives most of her business mail, including her paycheck, in Marshall County, spends weekends and summer and other vacations in Marshall County. She testified that she has, at all times, considered herself a resident of Marshall County and maintained the apartment in Huntsville and her voting registration there only as a "matter of convenience." Her registration to vote in Madison County may not be proper but that single fact is not controlling as to her residence.
 "Rabren v. Mudd, 285 Ala. 531, 234 So.2d 549
(1970), holds that in order to acquire a new domicile there must be an intent to abandon the present domicile with no present intent to return permanently or at least for an unlimited time. That case clearly shows that the place of voting and having a place to sleep are but two factors to be considered in determining if she had abandoned her Marshall County residence.
 "This court finds that Mrs. Heughan never intended to cease being a resident of Marshall County.
 "Defendant's Motion for a New Trial, on this and all other grounds, is DENIED."
We are of the opinion that the trial court correctly denied the appellant's motion for a new trial. Moreover, whether a motion for a new trial should be granted is within the discretion of the trial court. Maddox v. State, 520 So.2d 143
(Ala.Cr.App. 1986). When reviewing the trial court's decision regarding a motion for a new trial, this court will indulge every presumption in favor of the correctness thereof. Vinzantv. State, 462 So.2d 1037 (Ala.Cr.App. 1984). A decision by the trial court to deny a motion for a new trial will not be disturbed unless there is a clear showing of abuse of discretion. Nichols v. State, 500 So.2d 92 (Ala.Cr.App. 1986).
Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.